Michael D. Nassatir, N-A-S-A-T-I-R, for the appellate, Your Honor. Your Honor, there's, Your Honors, there is no case even close to, coming close to this case in the reported cases, that imposes 67 times the actual loss. And the question is, are we going to hold a defendant liable without giving him a chance to show that he did not cause the actual loss in this case at all? That's the question. Almost all the cases cited by the government involve dismissals without trial. It involves the United States asking this court for their chance to show their evidence in court and not to hold them accountable without a trial, without a factual issue. The court in each of these cases restored the complaint and let the government have their day in court. And that's what we're asking. This is a harsh statute with severe penalties. And as the Hibbs case says, Congress intended, this statute is intended to be fair when they pass this statute. And in order to be fair, a chance for a day in court must be afforded a defendant in a case where there are factual issues. And our position, of course, is that there are factual issues to be decided in this court. Well, are the factual issues causation issues? Yes. Or are we talking about the amount of mitigation and so on? Well, there is an issue as to the amount of mitigation, as to the amount of damages which will be traveled, but there is a huge issue as to causation. And the question is, how far out do you go for causation? Because in this case, what we have is a claim that was submitted by a mortgagee, a mortgage or based upon the mortgagee's default. The default is the action which actuates the claim. The claim is submitted, and by the way, may I reserve five minutes, Your Honor? You'll need to monitor your time, but we'll try and help you. Thank you, Your Honor. The actual claim is made when a buyer defaults. Now, in this case, it's been held that the buyer defaults based upon a statement or a false statement that the buyer has not contributed to the down payment. That is not the case. That is not the case. There are so many causes for buyer defaults which do not involve. Well, what if you back up a little bit and say that the loan would not have been made if the truth had been known about where the down payment was coming from? And that's what the court has done, but no court has ever held. What the statute says, and I think we have to hold. It wouldn't have been guaranteed. I shouldn't say the loan. I don't know if the loan would have been made. It wouldn't have been guaranteed. And I think we have to say that that's probably true in these cases. But what we can't say is that the default was caused by that situation. And the fact that the loan was issued to a low-income buyer with a 3% down payment in an FHA situation is not the be-all, end-all and causes the event. The absurdity of assuming that, which the district court did, is you have a loan that's been issued. The buyer makes payments for a year. Buyer makes payments for two years. Perfectly. The husband of the buyer gets cancer. He can't work anymore. They cannot pay the mortgage, and they default because of that. Not because somebody helped him with the down payment back down the road. They're perfect creditors. They behave like perfect creditors. How about Hurricane Katrina? If a hurricane comes and destroys the houses and the buyer can't go on, and it's not insured, that risk is not insured, as it wasn't in a lot of those cases. Is the fact that my client helped the buyer do the down payment and then lied about it, is that the cause? No. I mean, the statute imposes liability only for the commission of acts which cause false claims to be presented. Only for the commission of acts which cause the false claim to be committed. What was the proof of the false claims here? The proof of the false claims was the plea agreement that we signed in the criminal case. What was the plea? What did the plea agreement involve? It involved a false statement. It did not involve any that this caused the buyer to default. That was not the statement. It does not have the same elements as the False Claims Act. The fact that the government drafted that plea agreement, they have to be held to what it says and what it doesn't say. And what it doesn't say is what the actual cause of the government's loss was. Loss is discussed in the plea agreement, but that's intended loss in terms of the guidelines, where it doesn't matter what the actual loss is. This is the Federal Claims Act where the actual loss being trebled in advance is what the claim is. It didn't establish anything about causation. And with a statute like this, as you can see, with the harshest possible result, 67 times the actual loss. You know, the closest case that we could find that came to this is that Mackey case. And that's seven times, seven times the actual loss. So in this case, of all the reported cases, 60 times the actual loss here. And what that shows is that there are other factors at work other than the buyer's statement or the submission of a false statement that the buyer wasn't provided some of the down payment. The market went up. The market goes down. Factors happen. Sickness, loss of job, all kinds of intervening causes. That's why you can't, in our opinion, you can't, without a trial, take the fact that I had my wife sent me out to the store today. And she said, go buy me a carton of milk. And I go to the store, and on my way to the store, I drive recklessly and cause an accident. It's not my wife's fault. And we can't establish just because she started that chain of conduct, especially in this case where there's so many other factors. And what happened down below in the court that's so egregious is that the court found, without any other factors, that all 62 loans were caused by my client helping out with the down payment and falsely stating about it, without any proof whatsoever. Not even the plea agreement. So the question here is, is the government going to be allowed to engender a result like this, which is 60 times more than any other case decided in the United States, where the claim was not directly submitted by our client, where the proof does not supply the missing element of causation because it's a different statute, where the proof is so attenuated that it cannot even be rationally assumed that there aren't intervening factors, and where we don't know how many of those buyers who were helped with these down payments had successful loans without a trial, had successfully completed their loans, even with somebody contributing the 3% down payment, and that being on our client not telling the truth about it in the original loan. Now, what the court has said is there's no genuineness in this case. There's no genuineness in this case. There's no genuineness in the fact that there are 67 times damages that are due. And what the court is saying is we can bring about this case without testing the facts in a court of law. Now, I guess I left out one little factor here. The government has a burden of proof. The government has the burden of proof to uphold this summary judgment result, that there are no, and they have the burden of proof to prove that there are no triable issues of material facts. I think we've demonstrated here just, and that all inferences and the evidence must be construed in our favor upon this motion. It's absurd to assume that because a loan is issued and that a low-cost buyer is helped with a down payment, that that causes the default, which then causes a claim to be submitted. It is absolutely absurd. There are no cases on point with these facts from any circuit in the United States. Now, there is the case of Hibbs, which is still good law from the beginning. Hibbs was accused, the majority was accused of, because it was a harsh case which went over the top in terms of punishing someone and was an unjust result, the majority was accused in the, by the dissenter, dissenting justice, of going overboard in its having, demanding that there be no triable issues of material facts. Now, I'm not saying that this case requires causation. But I submit that this case is like Hibbs. Kennedy. But doesn't Bornstein, the Supreme Court Bornstein case, fly right in the face of your argument? Well, because Bornstein still requires causation. It's right and right. Kennedy. Well, okay. But I'm talking more now about the penalty, the damages that are assessed against your clients. Doesn't Bornstein still require causation? Does Bornstein support the treble damages? Bornstein does support the way the damages are calculated. But Bornstein, I submit, would have reached a different result had it had a case of this, where causation is — in the Bornstein case, causation was direct. The claim was submitted by that person who was damaged, not where we — But Bornstein came down, and I have some feeling that your argument maybe should have prevailed in Bornstein, but it didn't. And here we are, of course, bound by Bornstein. Of course, I — Bornstein, if read correctly, did not deal with Eighth Amendment issues. It didn't deal with the claim that — I agree with you on that. — that we're making here. This case is outrageous, I submit. And Bornstein, had it been faced with these facts, I think would have said, yes, that's the way — that's the way damages are calculated, according to the Act. But not this case. But Bornstein said that somewhat vague reference to, quote, damages, three times the damages. Bornstein said that doesn't mean net damages. That means the total amount that the government had to pay out. Isn't that what Bornstein said? That's what Bornstein says. But what — like I said, if Bornstein had been faced with the claim of the Eighth Amendment claim, and had been faced with a case like this, I believe that the Court would have reached a much different result. And I think this Court is free to reach a much different result. And Bornstein was after a trial. Bornstein was after a trial. It wasn't summary judgment. The facts were fully litigated down below. The party who was slammed — and I say slammed with, I think, two times the amount of actual loss. The party that was slammed in that case was the direct person involved, and had a chance to litigate his claims before a court, before — in a bench trial. Well, but assuming — this is a case of treble damages. Assuming the damages per Bornstein are the amount that the government paid out, without any reduction for selling the property, et cetera. Three times the damages is not something that gives rise to an Eighth Amendment violation, is it? Only in this case, where you have a situation, as we show in the record below, where you have no loss. Government paid out something, but you have no loss. And we — our client was assessed over $300,000 in damages. That reaches an Eighth Amendment issue, where there's no — that is a pure penalty, where there's no actual loss. Where the government sold the house for more money. The market went up. And they got a great deal. And still, $350,000 were assessed against our client, where there's no actual loss. That's a punishment. And that's an excessive punishment. And that's the excessive punishment in this case. And it's excessive punishment where the causation is stretched to an absurd level. An absolutely absurd level, that just because a loan wouldn't have been issued because of a 3 percent down payment, that caused the buyer to default. Without any showing at a trial, without entertaining any evidence whatsoever. I'll reserve the rest of my time. Thank you, counsel. May it please the Court, my name is Steve Frank from the Justice Department for the United States. Good morning, Your Honors. There are two primary issues before the Court in this case. It's not just damages. It's whether the damages rise to the level of being unconstitutional. On the first point, my colleague has made a strong argument here. It seems to be one of his themes is that there's a need for a trial. Unlike the case the Court just heard, where Judge Bybee suggested there might be a need for a trial, there are no triable issues of fact here. There's no factual issues in dispute. The dispute is a legal issue on causation. If we accepted your opponent's view that but-for isn't enough, then you would have probably triable issues in each of these loans on what caused the loss, wouldn't it? With all due respect, I don't think that would be necessarily the case. First of all, we would urge the Court to follow the Cicero line. We think that's the stronger line. But second, even the district court held in this case that even under the Hibbs analysis that it – this case passed the Hibbs analysis. It makes an assumption. It says, well, probably the representation – the false representation about the down payment is – it's much more likely you've caused the loss than representation of the condition of the property which was involved in Hibbs. But it might not. Well, I think it's – I think it was a fair assumption. The whole point of this regulation is to make sure that the people who are getting the loans have some financial stake in the matter and have some financial interest so that they can make it. It's not surprising that when defendants, as defendants counsel kindly puts it, helped these people by fraudulently providing the down payment, they were providing 3 percent down payment to people who didn't have that kind of money. So I think it's a fair assumption. And I don't think the Court needs to remand to see if someone got sick or that. I think that this meets on its face, meets the Hibbs test. But we would urge the Court – the Hibbs case is a 31-year-old decision that was decided – the statutes have been amended since then to change the language from by reason of to because. And I'm not sure that's dispositive, but it has been amended. It's long ago. And the trend has been the Cicero decision, which is the but-for test. That's the – that's what Cicero held. That is what – I think it's the cases Echelman held in the Sixth Circuit. So you have two circuits going for the but-for test. This Court has not directly decided between the two tests. But I would urge the Court to reexamine its decisions in McLeod and Ehrlich. I don't want to suggest that the Court in those cases was making a firm decision between Cicero and Hibbs. But in both of those cases, recent cases, by the way, the Court did use a but-for test. So I think that if the Court wanted to go away from the but-for test, it would first need to reconcile its opinion with those cases and also with the other circuits that have gone the other way. And I think that the but-for test – and I might add that in neither – there's been a line that has followed the Hibbs decision and I think made that assumption that Judge Canby was talking about, and I would urge the Court to look at the Spicer case out of the D.C. Circuit and the Miller case out of this Court. And all of these cases are cited in our brief with the cites, where the Courts found that there was a connection between a false statement regarding someone's creditworthiness and a default. If you follow the defendant's reasoning all the way, there could really never be an action under the False Claims Act in these kind of mortgage loan cases for a false statement because there might always be some kind of other intervening proximate cause. Our wives are always sending us out to get something. People cannot make loan payments because they get sick or what have you. But the fact of the matter is that the United States would not be here today, the United States would not have been involved in this but for a fraudulent certification. That certification is required by law under the HUD statute cited in our brief. And, in fact, in the recent Rogaine case out of the Seventh Circuit, that Court held at 517 Fed 3rd, 449, that a violation of a statute is per se material. And I think we also have to take into account the concessions that plaintiffs, excuse me, the defendants, I usually argue civil cases and I'm on the defendant's side, but the defendants made in this case, they conceded in their plea agreement that they did sign the agreement stating that they had made no contribution to the down payment. They conceded that that was false and, most important in that plea agreement, they conceded that it was material. And I think this is very critical to this case. In their brief, their opening brief in this Court, the defendants conceded, quote, that their convictions and criminal proceedings conclusively established that they knew the statements were false. And, this is the critical language, that the statements were material to the decisions or activities of HUD. In other words, they conceded that but for their false statement, HUD would not have insured and guaranteed the loans. There was, beyond their concession, there was testimony to that effect by a HUD official, Mr. Phan, who testified that they wouldn't have made the loan if they didn't have that A-1 form in front of them. And, aside from that, it's also the law. I mean, there's a statute that says HUD cannot make those. So, but for this fraudulent statement, the government would not have paid out the money and been at the loss. And we would strongly urge this Court to adopt the Cicero opinion. I would also like to draw the Court's attention, not only have I drawn the Court's attention to Echelman in the Sixth Circuit, McLeod and Ehrlich in this circuit, but another, I think, very critical case is the Woodbury case out of this circuit. And this may, on its face, seem to go to the damages issue, but at least in my mind, I think it goes to the but for as well. Because it says that the damages, the measure of the government's damages is the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful. To me, there's an implicit recognition of we paid out something only because we had been submitted false statements. So I think that's where we stand on that issue, and I think I would strongly urge the Court, it would be very important to the government to have the Ninth Circuit on board on the Cicero but for standard. But at a minimum, I think the government wins on this issue under the Hibbs test, and I don't think there's any issues of fact here, because, you know, I think that it's a fair assumption, Judge Canby, that most of these have to do with the subject matter of the false statement, people's creditworthiness. But even if it was a sickness or something like that, I don't think that gets them out of it. I just don't think that gets them out of it under either Cicero or Hibbs. Turning to the constitutional claim. Let me give you my $100 question. Yes, sir. My hypothetical is Northrop builds and sells F-116s with GPS in today's real world. Aircraft, contrary to my day, are navigated through the use of GPS. And Northrop knowingly installs a transistor in that GPS that's defective, that will only last five years instead of 10 years before it has to be replaced. So the government pays the $100 million to Northrop under a false certification from Northrop assuming that the plane is built in accordance with the specs, the plans and specs. Is Northrop then liable to the government for $300 million under the False Claims Act? Assuming that all of the elements of all the... I would say yes. I think Your Honor said it in questions to my colleague, that there's Bornstein laid out, whether we like it or not, Bornstein laid out the test. So you now say the government can recover $300 million because the transistor, $100 transistor had to be replaced. What would your approach be as far as whether or not that's a Eighth Amendment violation? Well, I think what Your Honor said to my colleague is the appropriate answer, which is under the statute, that's three times. And three times, I mean, we're not looking at total dollars here. Three times is three times, and that's what the statute provides. And I think that what's important here, I think that's what's very important, is that the defendants are not, they have not in the court below, and they didn't in their briefs, and they reiterated here before the court, that they are not challenging the manner in which the damages were calculated. That they agree that that was done per the statute, and they also agree that it was done per Bornstein. Their only argument is that they think it's excessive. And the basis of their arguing that it's excessive is based upon a false premise. It's a circular false premise, because it goes back to rejecting Bornstein. I'm not so sure that it's the treble damages that would be causing most of the loss in these cases. It's the proposition that you measure loss by what the government pays without taking any account of whether it recoups all of that, or less of it, or what. In other words, the government pays out according to its guarantee, and then, let's say, inherits a house that's worth twice what it just paid. Well, you ignore the house, and you just count the money paid out, which is a strange way to measure loss, you've got to admit. Well, several responses. First of all, that's the way the Supreme Court said it's done in Bornstein. They were very clear. I mean, they addressed a very analogous situation, because there you had a loss. The government lost X money, and the case was against a subcontractor. The prime contractor came back and paid back. Well, I think they were charged in criminal matters or in something else, and they paid off a certain part of the government's loss. And so the argument was, well, the government really didn't lose X dollars because it got paid back this money. And that's a logical way of looking at it, like Your Honor is doing. But the Supreme Court in Bornstein said that's just not the way it's done under the False Claims Act, that any of those paybacks, and the court said that any, if I might find the language here, it said, not having it directly here for me, it said that in computing the damages, the government's damages are to be multiplied before any subtractions are made for any payments, previously received by the government, and this is a critical language in Bornstein, 423 U.S. at 316, are made from any source, any source. And that would mean whether it's from, as in that case, the prime contractor paying it off in a criminal action, or in a case of where the government gets some houses and sells them off. And there's a reason. Who gets the profit in the market until recent times? Until recent times. That hypothetical, of course, is the government sells the house for more than they paid out. I guess the government, you know, sometimes you win, sometimes you lose. I guess the government gets the profit in that, but the point is... And plus three times the amount of the loan. Three times the amount that the government paid out. Plus the statutory penalty. Plus the statutory penalties, which the court awarded the minimum amount in this case, and I don't think they're really being challenged here. But that very concept, Judge Canvey, of the payout being the amount of the damages that you start with and triple before you deduct, is so clearly in the law, I cannot emphasize it enough. I would refer the court to several cases. First of all, the primary case is the Supreme Court case in Bornstein, which Judge Quackenbush quoted as saying, the FCA speaks of multiplying damages and not multiplying net damages or uncompensated damages. So right there, I think, is part of the answer, is right there in Bornstein. This court... As I calculated, the total loss to the government, the way the district court got it, was if you did it... If you counted what they got back, they're out about $100,000. And they've recovered... They've got a judgment now for a few million, and when does it become too excessive? If I do nothing else here, I would like to convince the court that when we say the government is out or the government's lost, that the court not accept defendants' theory that the government was out $86,000. Because what I just read there from Bornstein and what this court said in Mackbee, that the damages are measured by what the government paid out. That what we look at is not this $86,000. I mean, for Eighth Amendment purposes, you don't look at that? I don't think that you do. I think that, well, I think that you look at the statute, and I think that the statute, there's case law that says the statute is entitled to some deference under the Eighth Amendment. We've cited cases from the Eleventh Circuit and the Supreme Court case in Bajajian, which says that if the value of the forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional. And that's what we have here. It's within the range, as a matter of fact, the exact amount. And so I think what you have to look at is the statutory calculation, which there's no objection to it. What happened here is quite a simple matter. What did the government pay out? It paid out $2.8 million. Treble, that's $8.4 million. And from that, it did deduct. It took into account, it's not like it ignored, it took into account the property sales and the restitution, and that's where it came down to the $5.7 million. And I don't think $5.7 million is at all, it has to be grossly disproportionate. I'm not going to have enough time here to talk about the four factors to determine whether something is grossly disproportionate, but it's in our brief, and I'll tick them off really quickly. The courts look at whether there was other criminal activity. In this case, there were 62 fraudulent loans. We only went after them for 27 in this case. If we had gone after them for all 62, then our triple damages would have been ---- But you want to offset the fact that they were treated very fairly in the criminal setting, too. You took that position in the brief. Yes, I mean, the government, I don't think the government is overreaching. I'm not sure that's an appropriate consideration. I don't think the government is overreaching in this case, given the fact that they were engaged in a seven-year scheme to defraud not only HUD, but to defraud poor people, that they tried to hide the assets, and the government had to go in and get an attachment order, that there's serious criminal penalties of up to five years of felonies, the fines for the criminal penalties are worth up to $6.8 million. In my view, and under the case law, the government was out $5.7 million, and that was the judgment. To me, that's not 67 to 1, that's 1 to 1. Thank you for your time. Thank you, counsel. Thank you. No court has ever had a case which comes close to this result. And I think what counsel said is exactly the point that we're trying to make. That it's a fair assumption, it's a fair assumption that the government, and that's exact, that the government lost money, and that the damages are, have been caused by the appellants. A fair assumption, that's exactly what we're talking about, and that's what the court down below did. It assumed that these payments were caused by the statements that were made. Without any kind of proof. Yes, it was material to the issuance of the loan. But that doesn't mean there's no triable issues of fact. And exactly what the government says, there are always intervening factors in every case. Not like where a buyer defaults. That's a particular set of facts not addressed by any other court with a number of factors that can cause a default which causes the claim to be made. Outside of whether or not a false statement was made in the issuance of the loan. Loans are issued all the time. People default. Causes of the default are different in every case. And that's not a fair assumption, and it's not an assumable fact in a gross case like this. Where we need a record down below on a triable. And I think what your honors have said is the way damages are calculated in this case can violate the Eighth Amendment. Is there a loss, are there damages, when there's no loss? Because payments are paid out when there's no loss. Is that damages? And if damages are 300 times what an actual loss was, is that gross? Does that violate the Eighth Amendment? Bornstein is an instructive. Nobody brought up the Eighth Amendment in Bornstein where there was double the damages. Nobody brought it up in the other cases counsel cited where the most, the most that the government assessed was seven times damages. And in each of those cases, it was either a trial before that. Now, there's one case where there wasn't a trial. And the dissenting judge in that case, who is sitting before me now, said one thing, and it's very instructive here. The distinction is a critical one because the statute, this statute, imposes liability only for the commission of acts which cause false claims to be presented. We never got a chance to show what acts caused the false claims to be presented. In this case, we didn't even get a hearing. We filed papers, and the motion was granted. This would be a different story if given a fair chance to show whether our acts, whether the appellant's acts caused the loss in this case or didn't. And I ask this Court not to sanction this type of result based upon an assumption, based upon an assumption, based upon an assumption. A fair assumption, not based upon facts, and where the government has admitted that in this type of case, there's always intervening factors, always intervening factors. And I adopt that language, I accept that language, and I ask Your Honors to accept that language also. Thank you, counsel. We appreciate the arguments of both attorneys. United States v. Egg Bowl is submitted. With that, that concludes our calendar for the day. The Court stands in recess.
judges: Canby, Bybee, Quackenbush